Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| Edwin Meléndez Monserrate<br><br>*Recurrente*<br><br>v.<br><br>Departamento de Corrección y Rehabilitación<br><br>*Recurrido* | KLRA202400615 | Revisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B705-31930<br><br>Sobre: Clasificación de Custodia |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de febrero de 2025.

El señor Edwin Meléndez Monserrate (Meléndez Monserrate o recurrente) nos solicita que dejemos sin efecto la "*Resolución*" que emitió y notificó el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (DCR) el 24 de septiembre de 2024. En el referido dictamen, el Comité ratificó al recurrente en el nivel de custodia *mediana*.

Por los fundamentos que expondremos a continuación, se **confirma** la *Resolución* administrativa recurrida.

**I.**

El recurrente es miembro de la población correccional del complejo Bayamón 501 en mediana seguridad, en la cual cumple una sentencia de ciento ochenta y cinco (185) años por los delitos de maltrato agravado, tentativa de asesinato, portación y uso de arma blanca/fuego y disparar o apuntar armas de fuego. El Tribunal de Primera Instancia de Ponce dictó la sentencia e impuso penas por los delitos de Tentativa de Asesinato, Artículo 93 A del Código Penal

Número Identificador

SEN2025_____

de 2004[1], Infracción a los Artículos 5.04, 5.15 de la Ley de Armas de Puerto Rico[2], y por la "Ley para la Prevención e Intervención con la Violencia Doméstica" [Ley 54 de 15 de agosto de 1989], según enmendada[3].

El 3 de septiembre de 2024, el Comité de Clasificación y Tratamiento (CCT) se reunió con el propósito de evaluar el plan institucional del recurrente y determinó mantenerlo en *custodia mediana*. En las determinaciones de hechos[4] realizó un recuento de eventos en el que destacó lo siguiente:

> El confinado de referencia ingresó al Sistema Correccional en calidad de sumariado el 10 de febrero de 2017, por los delitos de Tentativa de Asesinato y ley de armas. Estuvo sumariado 1 año 6 meses 11 días.
>
> Fue sentenciado el 15 de agosto de 2018, a cumplir 25 años por 2 cargos de tentativa de asesinato.
>
> Por cada caso de posesión de armas (2 casos) fue sentenciado a 20 años de prisión con agravantes que se convierten en 40 años cada uno, consecutivos entre sí.
>
> En el caso de disparar o apuntar con un arma de fuego fue sentenciado a 40 años con agravantes que se convirtió en 80 años de prisión.
>
> La sentencia total es de 185 años. De los cuales 160 son naturales.
>
> El 21 de mayo de 2019, se le tomó muestra de ADN, Ley 75.
>
> Fue clasificado inicialmente en custodia máxima el 7 de septiembre de 2018.
>
> El 5 de agosto de 2019, le fue radicado un informe por ocupársele un teléfono celular y cargador casero durante un registro. Luego de estos actos no ha sido objeto de querellas ni de informes.
>
> El 22 de septiembre de 2022, se reclasificó en custodia mediana.
>
> Fue referido al NRT y a Physicians Correctional.
>
> El 13 de septiembre de 2022, completó terapias de Control de Impulso.
>
> Se encuentra tomando las terapias de SPEA las cuales se prevé culminarían durante el mes de diciembre de 2024.

---

[1] 33 LPRA sec. 4734 (25 por cada infracción).
[2] Ley 404-2000, 25 LPRA sec. 458n (Art. 5.15-80 años), (Art. 5.04-40 años, Art. 5.04-40 años) y (Art. 3.02-3 años 9 meses y 11 días).
[3] 8 LPRA sec. 632.
[4] Apéndice 5 de la Revisión Administrativa.

Cumplía el mínimo de sentencia para el 19 de junio de 2111 pero el 28 de septiembre de 2023, se le trabajó Ley 85 por lo que su nuevo mínimo es para el 4 de febrero de 2032 y el máximo el 4 de abril de 2196.

En las conclusiones de derecho, el Comité expresó, en parte, lo siguiente:

El Manual de Clasificación de Confinados estable el proceso de Reclasificación con objetivo actualizar y revisar la Evaluación Inicial de Custodia del confinado, verificando la adaptación del confinado y prestando atención a cualquier situación que pueda surgir. Se verificará y revisará los datos básicos relacionados a los delitos, sentencias, historial delictivo, órdenes de detención o arresto, encarcelamientos previos, y fechas de excarcelación previstas, entre otros factores, además de tomar en consideración los programas de tratamiento de los cuales se haya beneficiado el confinado. La reevaluación de custodia no necesariamente tendrá como resultado un cambio en la clasificación de custodia o vivienda asignada.

Al aplicar la escala de reclasificación para casos sentenciados, arroja puntuación de mínima custodia. Se utiliza una modificación discrecional par u[n] nivel de custodia mas alto. Posee el mínimo de sentencia para el 4 de febrero de 2032 y su máximo está para el 4 de abril de 2196, por delito de naturaleza violenta contra las vidas de un ser humano, la utilización de arma blanca y de fuego. Ha cumplido 7 años 6 Meses y 23 días de una sentencia de 185 años. En septiembre de 2022, fue reclasificado a custodia mediana por lo que solo lleva 1 año 11 meses en dicha custodia de una sentencia que le resta por cumplir 185 años. Este se ha beneficiado de las terapias de Control de impulsos y actualmente se encuentra tomando las terapias de SPEA las cuales se prevé culminaría durante el mes de diciembre de 2024. Debe beneficiarse de las terapias SPEA, evaluación fundamental para así poder tener mayores criterios para ser considerado en una custodia de menor restricción.

El Comité de Clasificación y Tratamiento le recomienda que continúe sin incurrir Querellas y continúe participando de las actividades o programas de tratamiento que vayan surgiendo para demostrar consistencias en sus buenos ajustes.

En desacuerdo, el 27 de septiembre de 2024, el recurrente solicitó Reconsideración. Adujo que el Comité de Clasificación tomó en cuenta la "gravedad del delito" para asignarle en custodia mediana. Además, que el Comité de Clasificación no evaluó su expediente actual omitiendo los estudios universitarios que cursa. Enfatizó que tomó las terapias de control de impulsos, es participante del proyecto Educador, resaltó que culminó el curso de Jardinería Comercial y Residencial, labora en mantenimiento del área escolar y toma las terapias SPEA. Insistió que el Comité tomó

en consideración una "modificación discrecional" y la "gravedad del delito" para reclasificarle en custodia mediana pasando por alto lo que establece el Reglamento 9151, en su apéndice K (Formulario de Clasificación de Custodia Escala de Reclasificación de Custodia). Enfatizó que en la escala de nivel de custodia arroja una puntuación de "1 que lo ubica en la escala "mínima". Agregó que las modificaciones discrecionales para un nivel de custodia más alta, según el apéndice K, sección III (D), debe estar basada en documentación escrita proveniente de reportes disciplinarios y cualquier otra información que evidencie los ajustes o el comportamiento del confinado. Solicitó que lo clasifiquen adecuadamente.

El 2 de octubre de 2024, notificada el 9 de octubre de 2024, la Oficina de Clasificación de Confinados determinó no acoger la solicitud de reconsideración. Explicó lo siguiente:

> De la documentación presentada se desprende que el 15 de agosto de 2018, comenzó a extinguir sentencia de 185 años en prisión por los delitos de Maltrato Agravado, Tentativa de Asesinato, Portación y Uso de Arma blanca/Fuego y Disparar o Apuntar Armas de fuego. Posee el mínimo de sentencia para el 4 de febrero de 2032 y el máximo se prevé para el 4 de abril de 2196, dentro de 172 años tentativamente.
>
> Al aplicar la Escala Inicial de Clasificación (Casos Sentenciados), arroja una puntuación de (1) lo que recomienda un nivel de custodia mínima, cuando obtienes una puntuación de 5 o menos en reglones de 1 al 9. Se le aplica la <u>Modificación Discrecional para un nivel de custodia más alto</u> "Gravedad del Delito" lo que implica conforme al Manual para la Clasificación de Confinados, que<u>: La puntuación subestima la gravedad del delito.</u> El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación. "De la sentencia en apelación emitida por el Tribunal Supremo se desprende que el recurrente irrumpió en el hogar de su exesposa y la agrede con un arma de fuego. En hechos independientes pero juzgados consecuentemente se desprende que apunto y disparo un arma de fuego en la vía pública contra la madre y el esposo de su exesposa, atentando contra la vida de estos y contra la comunidad en general. Estos hechos de naturaleza violenta y de los cuales se desvincula en la versión del delito que ofrece a su Técnico Sociopenal asignado, justifican el uso de la modificación discrecional recurrida".

Inconforme con la decisión, el 30 de octubre de 2024, el recurrente presentó un recurso de revisión administrativa, en el cual alegó varios señalamientos de error, a saber:

El Comité erró en sus acuerdos tomados ya que estos en el punto 4 (Anejo 2) estos exponen que continuaba asignado a barbería el cual el aclaré al comité que llevo desde feb de 2024 asignado a labores en el área escolar.
Evaluó lo largo de la sentencia para establecer que estuviera más tiempo en custodia.

El Comité no tomó en cuenta mi expediente por lo cual el proceso de evaluación fue defectuoso, al no tomar en cuenta que está en su segundo año del curso vocacional asistente administrativo, todas las labores efectuadas durante el confinamiento, las terapias tomadas y, por último, que las SPEA no es un criterio para considerarse según el Manual para Clasificación de Confinado.

El Comité Evaluador pasó por alto otros aspectos fundamentales y solo se basan en la sentencia y lo extenso de la misma sin ver el ajuste favorable y viable para ser partícipe de una mínima custodia, quebrantando la política pública de rehabilitación al confinado.

El 14 de noviembre de 2024, emitimos *Resolución* en la cual concedimos treinta (30) días a la Oficina del Procurador General para que expusiera su posición en cuanto al recurso presentado. Luego de evaluar la solicitud del recurrente, la determinación administrativa y el *Escrito en Cumplimiento de Resolución*, nos expresamos.

**II.**

**-A-**

La Constitución de Puerto Rico, en la Sección 19 del Artículo VI, establece como política pública que el Estado habrá de: "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social"[5].

Mediante el Plan de Reorganización Núm. 2-2011 se invistió al Departamento de Corrección y Rehabilitación con la facultad de

---

[5] Artículo VI, Sec. 19, Const. ELA, LPRA, Tomo 1. *Cruz v. Administración*, 164 DPR 341, 351 (2005).

efectuar la clasificación adecuada y revisión continua de la clientela, conforme a los ajustes y cambios de ésta[6]. El Plan de Reorganización facultó al Departamento de Corrección con el poder de reglamentación para estructurar la política pública correccional y establecer las normas para el régimen institucional[7].

De acuerdo con sus facultades, el Secretario del Departamento de Corrección y Rehabilitación, adoptó el *Manual de Clasificación de Confinados*, Reglamento Núm. 9151, de 22 de enero de 2020, (Reglamento 9151). El Tribunal Supremo ha expresado que estos reglamentos delimitan la discreción de la agencia en los asuntos relacionados con la clasificación de custodia de los confinados[8].

El Reglamento 9151 define la reclasificación de custodia como la "Revisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su nivel de custodia." Sección 1, Reglamento 9151.

En relación con la clasificación de custodia, el Reglamento 9151, dispone que existen cuatro niveles reconocidos que se basan en el grado de la supervisión que se requiere. En lo aquí pertinente, la Sección 1 del Reglamento define el nivel de "custodia mediana" como los confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. De otro lado, la clasificación de "custodia mínima" se refiere a los confinados de la población general que son elegibles para habitar en vivienda de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión.

---

[6] Véase el Artículo Núm. 5, Plan de Reorganización, 3 LPRA Ap. XVIII.

[7] Art. 5(c), Plan de Reorganización, 3 LPRA Ap. XVIII, Véase, *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 499 (2022).

[8] *Lebrón Laureano v. Depto. Corrección, supra*; *López Borges v. Adm. Corrección*, 185 DPR 603, 620 (2012); *Cruz v. Administración, supra*, pág. 352.

Las determinaciones del Comité sobre la reclasificación de custodia de un confinado sentenciado, debe fundamentarse "en el análisis de la totalidad de los expedientes del confinado desde su ingreso hasta el momento de su evaluación [...]"[9].

Para llevar a cabo este proceso de reclasificación, la Sección 7 (II) del Reglamento 9151 establece el siguiente método:

> El formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia, Apéndice K) se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. **La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.**
>
> La revaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. (Énfasis nuestro).

El aludido Apéndice K, del Reglamento 9151, provee para el nivel de custodia indicado por la escala, según el formulario de *Reclasificación de Custodia*. Estos niveles de custodia se detallan en la Parte III(A) de la Escala, la cual establece:

> 5 puntos o menos en renglones 1-8... Mínima
>
> 5 puntos o menos en renglones 1-8 con órdenes de arresto/detención...................................Mediana
>
> 6 a 10 puntos en renglones 1-8......... Mediana
>
> 7 puntos o más en renglones 1-3...... Máxima
>
> 11 puntos o más en renglones 1-8... Máxima

El Tribunal Supremo ha reiterado que esa puntuación, por sí sola, no conlleva un cambio automático en la clasificación del nivel de custodia. Ello, debido a que la Escala de Reclasificación le provee al Técnico Sociopenal algunos criterios adicionales "discrecionales" y "no discrecionales" para determinar el grado de custodia que

---

[9] Sección 7 (IV) (B) del Reglamento 9151.

finalmente recomendará para un confinado[10]. Estos criterios son evaluados en la parte III de la Escala de Reclasificación. El Apéndice K, Sección III, provee para las modificaciones no discrecionales y **modificaciones discrecionales** que permiten un nivel de custodia más alto y bajo[11].

Respecto a las modificaciones discrecionales, la Sección III (D) de las *Instrucciones para el Formulario de Reclasificación de Custodia* del Reglamento 9151, dispone lo siguiente:

> MODIFICACIONES DISCRECIONALES PARA UN NIVEL DE CUSTODIA MAS ALTO
>
> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.

En el renglón de los criterios discrecionales para asignar un nivel de custodia más alto se encuentran: **la gravedad del delito**; el historial de violencia excesiva; la afiliación prominente con gangas; que el confinado es de difícil manejo; grados de reincidencia; el riesgo de fuga; el comportamiento sexual agresivo; trastornos mentales o desajustes emocionales; representar amenaza o peligro; la desobediencia ante las normas, y el reingreso por violación de normas[12].

En cuanto a la "gravedad del delito", el inciso D de las Instrucciones explica lo siguiente:

> El personal tiene que documentar las características del delito que están consignadas en la exposición de hechos que se utilizan como fundamento para la decisión de modificación.
>
> Los confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.

---

[10] *Lebrón Laureano v. Depto. Corrección, supra,* pág. 501; véase, además, Apéndice K del Reglamento 9151.
[11] Véase, *Cruz v. Administración, supra,* pág. 353.
[12] Instrucciones para Formulario de Reclasificación de Custodia, Escala de Reclasificación, Apéndice K, Sección III, D del Reglamento 9151.

Por otro lado, para los confinados con sentencias de 99 años o más, el Reglamento señala que "[n]o se podrá recurrir al uso de la Modificación Discrecional sobre la "Gravedad del delito" ni al uso de los fundamentos "extensión o largo de la sentencia" **para mantenerlos en custodia máxima**". Instrucciones para Formulario de Reclasificación de Custodia, Sección III, inciso C.

De lo anterior se destaca que la determinación del nivel de custodia proviene de un conjunto de criterios y no solo de la puntuación obtenida en la parte II de la Escala de Reclasificación[13]. De modo que, la reclasificación responde al resultado de la parte II y parte III de la Escala de Reclasificación, las que incluye las consideraciones especiales de manejo, las modificaciones no discrecionales y las modificaciones discrecionales para un nivel de custodia más alto o bajo[14].

El Tribunal Supremo ha reiterado que la reducción de custodia "está condicionada al cumplimiento del reo con los requisitos de su plan institucional, que va evolucionando durante el encarcelamiento de acuerdo con el aprovechamiento del proceso de rehabilitación por parte del confinado"[15]. En este análisis, el Comité, por lo general, está compuesto de "peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales"[16]. Así, "[e]stos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones"[17].

**-B-**

Por último, sabido es que el Departamento de Corrección merece particular deferencia en lo concerniente al proceso de

---

[13] *Lebrón Laureano v. Depto. Corrección, supra.*
[14] *Íd.*
[15] *López Borges v. Adm. Corrección, supra,* pág. 609.
[16] *Lebrón Laureano v. Depto. Corrección, supra,* pág.504; *Cruz v. Administración, supra,* págs. 354-355.
[17] *Lebrón Laureano v. Depto. Corrección, supra,* pág.504*; Cruz v. Administración, supra,* pág. 355.

clasificación de confinados[18]. Cónsono a lo anterior, las determinaciones administrativas gozan de una presunción de legalidad y corrección, ya que cuenta con la experiencia y pericia para realizar este tipo de evaluaciones[19]. Como consecuencia, las determinaciones administrativas deben sostenerse por los tribunales siempre que no sean arbitrarias o caprichosas[20]. Por eso, si una decisión de clasificación de custodia es razonable y cumple con el procedimiento de las reglas y manuales sin alterar los términos de la sentencia impuesta, el Tribunal debe confirmarla[21].

**III.**

Por estar intrínsecamente relacionados, atenderemos todos los errores conjuntamente. El señor Meléndez Monserrate alegó que el Comité de Clasificación y Tratamiento ratificó su custodia mediana, sin darle peso sustancial al ajuste institucional, el cual ha cumplido de forma efectiva y sin percance alguno. Señaló que le resulta adverso que se utilice únicamente el criterio de modificación discrecional por la "gravedad del delito" para mantenerlo en la custodia "mediana". Mencionó que la evaluación que realizó el Comité arrojó una puntuación de 1, lo cual lo ubicaría en la custodia "mínima", según la Sección III, inciso (A) del Reglamento 9151. Señaló que ha cumplido con el ajuste institucional de una manera intachable. Disputó que el Comité actuó de forma arbitraria e irrazonable sin una base racional sustancial. Veamos.

El Comité de Clasificación realizó la evaluación de custodia del señor Meléndez Monserrate mediante el procedimiento de puntuaciones que provee el apéndice K del Reglamento 9151. Este

---

[18] *Lebrón Laureano v. Depto. Corrección, supra; Cruz v. Administración, supra.*

[19] *Lebrón Laureano v. Depto. Corrección, supra; Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021)*; Capó Cruz v. Jta. Planificación et al,* 204 DPR 581, 591 (2020).

[20] *Lebrón Laureano v. Depto. Corrección, supra,* pág. 503*; Román Ortiz v. OGPe,* 203 DPR 947, 956 (2020).

[21] *Lebrón Laureano v. Depto. Corrección, supra,* pág. 504*; Cruz v. Administración, supra,* pág. 355.

análisis arrojó una puntuación de "1", que ubicaría al recurrente en una custodia "mínima". No obstante, el Comité reconoció que, aunque la planilla de reclasificación estableció una puntuación correspondiente a una custodia mínima, era necesario aplicar el criterio de la "modificación discrecional", que provee el Reglamento 9151, Apéndice K, Sección III, D.

En este acápite, el Comité utilizó como modificación discrecional la "gravedad del delito". Explicó el Comité que el recurrente cumple por los delitos de Maltrato Agravado, Tentativa de Asesinato, Portación y Uso de Arma blanca/Fuego y Disparar o Apuntar Armas de fuego. Posee el mínimo de sentencia para el 4 de febrero de 2032 y el máximo se prevé para el 4 de abril de 2196, dentro de 172 años. Aseveró que el recurrente al momento no había finalizado las terapias de SPEA para tener una evaluación actualizada y obtener garantías mínimas. Expresó que era necesario que permaneciera un tiempo adicional en custodia mediana para continuar observando su proceso de rehabilitación, hacia transformación de conducta y actitudes de un ser humano dirigidos a su integración a la sociedad. El Comité también reconoció que el señor Meléndez Monserrate no había tenido ningún incidente disciplinario desde el 2019.

El Reglamento 9151 le permite al Comité utilizar las modificaciones discrecionales para establecer un nivel de custodia más alto al que arroje la puntuación. Las modificaciones discrecionales incluyen, entre otras, la "gravedad del delito". A diferencia de la custodia máxima, en los casos de custodia mediana nada impide que el Comité se refiera a esta modificación discrecional para mantener a un confinado en referida custodia por un tiempo adicional. En su análisis, el Comité también entendió que era necesario obtener una evaluación actualizada de la Sección de Programa de Evaluación y Asesoramiento (SPEA) y consideró otros

aspectos, tales como, el poco tiempo que llevaba el recurrente en la custodia mediana. Esta decisión nos parece razonable.

Todo lo descrito anteriormente nos lleva a concluir que la determinación final de custodia está sustentada por el expediente administrativo, es compatible con la reglamentación aplicable, no es contraria a derecho, ni arbitraria o caprichosa. El Comité puede considerar ciertos criterios que, en conjunto, le permitan, de manera discrecional, modificar el grado de custodia que le será adjudicado al confinado.

En virtud de lo antes expresado, no encontramos razón que amerite descartar el criterio de deferencia que le debemos a la determinación recurrida y nos permita sustituir las conclusiones del Comité de Clasificación del Departamento de Corrección, por las nuestras, los errores no fueron cometidos. En consecuencia, procede confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos antes mencionados ***confirmamos*** la resolución recurrida.

El Secretario del Departamento de Corrección y Rehabilitación deberá entregar copia de esta determinación al recurrente en la institución correccional donde se encuentre.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones